Richard Heckscher et al., Plffs. in Err., *v.* Peter W. Sheafer et al.

In an action by a lessee against his lessor, for damages for breach of covenant in a mining lease containing a stipulation that surface supports should be left, parol evidence reforming the lease, to the extent of giving to the plaintiff the absolute right to mine all the coal without regard to surface support, is inadmissible.

(Argued February 14, 1888.   Decided April 30, 1888.)

July Term, 1886, No. 159, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ.   Error to the Common Pleas of Schuylkill County to review a judgment of nonsuit in an action of covenant, January Term, 1881, No. 31. Affirmed.

In 1868, Peter W. Sheafer and John Gilbert were the owners of a tract of land situate in West Shenandoah, Schuylkill county, Pa., and by lease of said date granted, demised, and let

for a term of fifteen years from January, 1869, to Richard Heckscher, August C. Heckscher, and Jacob Glover, the exclusive right and privilege of mining coal in, out of, and from all the coal beds down to the Mammoth vein, in a certain portion of said tract described in said lease. The lease stipulated that pillars of coal should be left on approaching any of the boundaries of the lessor's land, and also that the said lessees should work the mines in a safe, skilful, and workmanlike manner, and also subject to the provisions of any agreement theretofore made by the lessors for the protection of the roadway of any railroad company passing over the said leased premises, and so as not to interfere with the rights and privileges of any owner of town lots in West Shenandoah or Shenandoah City.

The foregoing were all the material provisions of the lease, in relation to the manner and extent of working and removing the coal.

In September, 1868, the lessees commenced work on the demised premises, and expended from $300,000 to $350,000 in the erection of improvements and sinking shafts, slopes, and making other mining improvements for the purpose of getting out the greatest amount of coal, and working the said mines in the most skilful, approved, and workmanlike manner, and by said outlay succeeded in erecting and opening a large colliery, capable of shipping 200,000 tons per annum.

By the spring of 1879 gang ways had been driven on the upper workings to the boundary lines of the lease; a large quantity of coal had been taken out, and the breast pillars were being what is called in mining terms, "robbed back." This consisted in taking out the pillars as far as practicable, and drawing out the coal preparatory to abandoning mining in portions so robbed.

After said lease to Heckscher *et al.,* Gilbert and Sheafer, the lessors, executed and delivered to various persons deeds for surface lots over and above the coal demised by the lease. The respective grantees severally entered into the possession under such deeds, erected dwelling houses and other improvements on the premises so conveyed, and resided therein with their families. Each of said deeds contained the following reservation and exception:

"Subject, nevertheless, and excepting and reserving as follows, and not otherwise, that is to say: First excepting and re-

serving to the grantor, party of the first part hereto, his tenants, lessees, heirs, and assigns all the fossil or mineral coal, iron, and other ores and minerals that may be found under the surface of the earth within the boundaries of the above-mentioned and described lot or piece of ground, with right of digging for, mining, and taking away the same without making any compensation therefor to the said grantee, party of the second part hereto, his heirs and assigns; provided always, That neither the said grantor, party hereto of the first part, nor his heirs, executors, administrators, or assigns at law or in equity, shall be in any way responsible for the acts or doings of his lessees or any of them in working, or digging the said coal, iron, or other ores or minerals, nor for any loss or damage which such acts or doings may occasion to the grantee, party hereto of the second part, or any other person or persons, owners or occupiers of the premises, but that the person or persons actually working the said mines or minerals and actually doing, causing, or occasioning any loss or damage as aforesaid shall be solely and exclusively liable and responsible therefor."

The robbing back and taking out the pillars of coal caused the surface of the ground of the lots to partially subside and threatened to cause further subsidence; whereupon, the lot owners procured on June 18, 1879, a preliminary injunction restraining the mining or removal of coal or other materials from under the surface of the complainants, or from under any lots immediately adjacent to any or either of said lots; whereby Heckscher *et al.* were prevented from getting a very large body of coal, probably over 100,000 tons, to obtain which they had expended a large amount of money in driving gang ways, headings, chutes, etc., and were compelled in order to maintain the shipment of their colliery to expend a large additional amount in the opening up of other parts of the colliery and compelling them to exhaust the coal which had been reserved for a later period of their lease. To recover the damages thus sustained they brought this suit.

Subsequently the defendants purchased said surface lots and directed the plaintiffs to go on and take out the coal, irrespective of the effect of such mining upon the surface; but during the time that the injunction continued in force, a period of several years, the workings became so much closed by reason of the rot-

ting of the timbers and supports that it was impossible to get more than 12,000 tons of coal, and that only at great expense.

The plaintiffs made the following offers of testimony.

On the trial, plaintiffs offered to prove that in 1868, the time this lease was made, there was a well-recognized manner of working the Mammoth vein of coal in the Mahanoy and Shenandoah valleys, in Schuylkill county, where the Mammoth vein exists, under substantially the same conditions; that such methods of mining were universal throughout the mining region under the same conditions; that it was not deemed, at the date of this lease, practicable or possible to mine the Mammoth vein of coal and remove therefrom such quantity of coal as would make it reasonably safe to mine the same, and at all profitable either to the landlord or to the tenant without occasioning a subsidence of the surface; that the land along the outcrop of the veins in the Shenandoah and Mahanoy valleys was rough, mountain land, unfit for agricultural purposes, and possessing no value except as it might attain a value through the development and mining of the coal beneath; that these facts in reference to the working of the Mammoth vein were well known to Peter W. Sheafer and John Gilbert, the lessors, at the time they made the lease to Glover and Heckscher; that the operations which were conducted in the Mammoth vein by the lessees, under the direction of the lessors, through their agents, never contemplated working the Mammoth vein at any stage, or at any time, or in any way other than in such manner as would necessarily bring down the surface; and that the method of working, by plaintiffs, of the Mammoth vein, in the Kohinoor colliery, was in the most effectual, workmanlike, and proper manner, according to the most approved and suitable manner or method of modern mining; that such method of mining was necessary in order to secure all the available coal required by the lease to be taken from the said mine and paid for by the tenants; that the coal could not practicably be exhausted from the said vein as required by the said lease, in any other way than by such method of mining as was pursued by Heckscher *et al.*

Objected to as irrelevant. Objection sustained. Exception. [1]

Plaintiffs also offered to prove that at the time the demise in evidence was executed and prior thereto the defendants represented that the lease should embody the right to remove all

the coal; that in all grants of the surface theretofore made, provision had been made for all the coal, without restriction, being removed; that subsequently the defendants, by verbal and written instructions to the plaintiffs, required and directed them to take out all the coal so as necessarily to leave down the surface; that the plaintiffs worked the coal in a most skilful, workmanlike, and effectual manner, according to the most approved mode of modern mining; that the size, character, and situation of the Mammoth vein in the demised premises were such that said vein could not be worked as required by the lease without letting down the surface.

This evidence was offered to show: 1, The intention and meaning of the parties to the lease as to the extent of the right of the plaintiffs to mine, with respect to the effect thereof upon the surface; 2, the construction of the lease put upon it by the defendants themselves; and 3, that the reservation of the support of the surface, even if expressly and in terms made in the lease, would be repugnant to and destructive of the grant and therefore void.

Objected to. Objection sustained. Exception. [2]

Plaintiffs also offered to prove that on March 2, 1876, the lessors directed in writing such a method of mining by the lessees in the immediate neighborhood of the lots in question covering a part of the territory covered by the injunction as would necessarily, by the direction then given to remove the pillars, bring down the surface, and which directions the lessors directed their engineer to see enforced; and that subsequently on January 30, 1877, the lessors, in writing, declared that the method of mining therein stated to have been agreed upon between the lessors and lessees in the section of the mine in question would, when the pillars were removed, break the dividing stone, and in falling would bring down the top benches with it, and that this method was satisfactory to the lessors.

Objected to. Objection sustained. Exception. [3]

Plaintiffs also offered to prove that by reason of the conveyance by defendants of the said surface rights to and the injunction obtained by said grantees, plaintiffs were prevented from mining, and actually lost 100,000 tons of merchantable and marketable coal, which would have netted plaintiffs, after paying all costs and charges of mining, hoisting, preparing, and shipping to market, the sum of $100,000.

Objected to. Objection sustained. Exception. [6]

Plaintiffs also offered to prove, by conversations and understandings of the parties, before, at the time, and after the execution of the lease in evidence, also by the verbal and written statements of the lessors made subsequently to its execution, that it was intended by the parties to be so drawn, and that such language should be inserted therein as to give to the lessees the right to remove all the coal (except as expressly excepted) within the limits of the demise, without regard to the effect thereof upon the surface.

Objected to. Objection sustained. Exception. [7]

On motion of the defendants the court granted a nonsuit; and on refusal of the court in banc to take it off, the plaintiffs took this writ, specifying as error 1, 2, 3, 6, 7, the rejection of the above evidence.

*Geo. R. Kuercher, Guy E. Farquhar,* and *Geo. M. Dallas,* for plaintiffs in error.—The true and legal construction of the lease authorized and required plaintiffs to take out all of the available coal within the demised premises, irrespective of the effect thereof upon the surface, except so far as the lessors had theretofore covenanted or bound themselves to maintain the surface by reason of agreements with railroad companies and grants of surface lots in Shenandoah City and West Shenandoah.

The owner of the surface may, by agreement, release or convey this right of support so that the minerals may be removed without reference to the support of the surface. Scranton v. Phillips, 94 Pa. 15.

What is meant by coal left for the security of the works has no reference to the surface, but excludes the same; because works in a colliery refer to the slopes, tunnels, gang ways, breasts, headings, pillars, water ways, air ways, etc. Eadon v. Jeffcock, L. R. 7 Exch. 379; Harris v. Ryding, 5 Mees. & W. 60; Humphries v. Brogden, 12 Q. B. 739; Smart v. Morton, 5 El. & Bl. 30; Rowbotham v. Wilson, 8 H. L. Cas. 348.

Where there is a latent ambiguity in a contract or agreement it is for the jury, not the court, to determine the extent of the grant from evidence *dehors* the instrument. Tiley v. Moyers, 43 Pa. 404.

If words used in a contract be technical, local, or generic or

indefinite or equivocal on the face of the instrument or made so by proofs of extrinsic circumstances, parol evidence is admissible to explain by usage their meaning in a given case. Brown v. Brooks, 25 Pa. 213.

Where the meaning of an agreement is doubtful its terms are to be construed in the light thrown on them by proved or admitted illustrative facts. Lacy v. Green, 84 Pa. 514.

The sense and meaning of the parties in any particular part of an instrument may be collected *ex antecedentibus et consequentibus;* and for that purpose the situation and relation to the subject-matter of their agreement and all the provisions of the instrument may be shown. Williamson v. McClure, 37 Pa. 408; Carey v. Bright, 58 Pa. 70; Gordon v. Little, 8 Serg. & R. 533, 11 Am. Dec. 632; Hyndman v. Hogsett, 111 Pa. 644, 4 Atl. 717; Muirhead v. Clabby, 7 Phila. 345; Foster v. Mc-Graw, 64 Pa. 464; Colder v. Weaver, 7 Watts, 470.

Parol evidence, which contradicts nothing embraced in a writing, but only an implication from what is written, is admissible. Chalfant v. Williams, 35 Pa. 215.

It matters not whether the entry be by the landlord or his agent, or whether it be occasioned and produced by him; in any event it is his act, and upon him the law visits the consequence of the interference with the rights of the tenants. Bauders v. Fletcher, 11 Serg. & R. 421.

Every lease contains an implied covenant for quiet enjoyment; and when the lessor suffers the demised premises to be recovered from his tenant by an outstanding title, his right to recover rent is gone. Ross v. Dysart, 33 Pa. 452; Hazlett v. Powell, 30 Pa. 295.

There may be an eviction without actual physical expulsion. McClurg v. Price, 59 Pa. 423, 98 Am. Dec. 356.

Any interference with the tenant's beneficial enjoyment of the demised premises amounts to an eviction at law. Doran v. Chase, 2 W. N. C. 609.

The breach of implied covenant suspends the payment of rent by the tenant. Seabrook v. Moyer, 88 Pa. 417; Schuylkill & D. Improv. & R. Co. v. Schmoele, 57 Pa. 271.

*Mason Weidman, John G. Johnson,* and *J. W. Ryan,* for defendants in error.—See, as to the right to surface support, Carlin v. Chappel, 101 Pa. 348, 47 Am. Rep. 722; Coleman v.

Chadwick, 80 Pa. 81, 21 Am. Rep. 93; Jones v. Wagner, 66 Pa. 429, 5 Am. Rep. 385; Horner v. Watson, 79 Pa. 242, 21 Am. Rep. 55; Scranton v. Phillips, 94 Pa. 15; and Nelson v. Hock, 36 Phila. Leg. Int. 215.

Defendants conveyed to grantees, who took with knowledge of the possession of plaintiffs, and of all rights which could be ascertained by inquiry of those who were in possession. They also notified the grantees, in the conveyance which they made, of the existence of a lease.

"When a lease is stated, it is the business of the party to look at it, and to see whether there is any covenant that may materially influence his judgment as to the value. If the circumstance that the land was in lease had been concealed, that would be a different consideration; but upon analogy to other cases, if the party has notice that the estate is in lease, . . . if, for instance, there is a covenant to renew, the purchaser cannot object that he had no notice of that particular covenant." Hall v. Smith, 14 Ves. Jr. 426–432.

A purchaser knowing the estate is in tenancy, and being informed specifically that it is in lease, is bound to know all the contents of the leases, and cannot take upon himself a partial knowledge. Taylor v. Stibbert, 2 Ves. Jr. 441.

Nor will it make any difference, whether the whole of those rights originate in the contract by which the tenant holds the estate, or whether some of them arise out of a contract independent of and subsequent to the agreement of lease. See also Daniels v. Davison, 16 Ves. Jr. 249; 17 Ves. 435; Sugden, Vendors, 543.

The purchaser of an estate in the possession of tenants is chargeable with notice of the extent of their interests as tenants; for, having knowledge of the tenancy, he is bound to inform himself of the condition of the lease. Hood v. Fahnestock, 1 Pa. St. 474, 44 Am. Dec. 147; Leach v. Ansbacher, 55 Pa. 85; Jaques v. Weeks, 7 Watts, 276; Lightner v. Mooney, 10 Watts, 407, and Woods v. Farmare, 10 Watts, 195; Evans v. Bidwell, 76 Pa. 497; Maul v. Rider, 59 Pa. 167.

Whatever is sufficient to put a party on inquiry is deemed notice in equity; the law imputes to a purchaser the knowledge of a fact of which the exercise of common prudence and ordinary diligence must have apprised him. Walsh v. Stille, 2 Pars. Sel. Eq. Cas. 17.

Notice of a deed is notice of its contents. Possession by a tenant renders a purchaser chargeable with notice of the extent of the tenant's interest. 4 Kent, Com. *179. See also Jones v. Wagner, 66 Pa. 434, 5 Am. Rep. 385; Horner v. Watson, 79 Pa. 242, 21 Am. Rep. 55.

An alteration of the covenant sued upon by parol would have made the whole instrument parol, and would have destroyed the right to our action of covenant upon the instrument as being written. No interest in land for a longer period than the term of three years can be created by parol. See Lehigh Coal & Nav. Co. v. Harlan, 27 Pa. 429; Miller v. Fichthorn, 31 Pa. 252.

The court below awarded special injunctions because they thought the lease did not confer the right to mine all the coal without leaving supports. In so doing it followed Harris v. Ryding, 5 Mees. & W. 60; Glasgow v. Hurlet & C. Alum Co. 3 H. L. Cas. 25, 8 Eng. L. & Eq. 13; and Humphries v. Brogden, 20 L. J. Q. B. N. S. 10, 1 Eng. L. & Eq. 241. See also Sheaffer's Appeal, 100 Pa. 379.


PER CURIAM:

The offers of evidence in this case were properly refused; for without reference to the fact that surface support is not only a legal but a natural right, if the alleged parol alterations of the lease were made before the sales of the surface to the defendants' vendees that fact might have been set up to defeat the bill brought by those vendees against the present plaintiffs, and it was no fault of the defendants that that was not done.

If, on the other hand, those alterations were made after those sales, then clearly, as the vendees were in possession, the plaintiffs had notice of their right to surface support, and must have acted in view of it. But further, had the plaintiffs succeeded in proving the alterations as proposed, the result must have been to establish a parol agreement on which an action of covenant would not lie. It follows that with or without the rejected evidence the plaintiffs had no case.

Judgment affirmed.